1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6
7    MONETTE ROCKYMORE,                    Case No. 3:22-cv-00176-WHO

8              Plaintiff,

9         v.                               **ORDER ON MOTIONS TO REMAND AND DISMISS**

10   EUROFINS DONOR & PRODUCT               Re: Dkt. Nos. 11, 21
     TESTING, INC., et al.,
11
               Defendants.
12

13        Plaintiff Monette Rockymore alleges that she was mistreated by her employer and

14   managers.  She makes many claims, including discrimination and related claims on the basis of

15   race, gender, and disability.  She moves to remand this case to state court; the defendants move to

16   dismiss.  The motion to remand is denied: the defendants have adequately shown that diversity

17   jurisdiction is proper at this posture.  The motion to dismiss is granted in part and denied in part.

18   It is denied on the claims for race and gender discrimination, retaliation, failure to provide a

19   reasonable accommodation, and negligent supervision.  It is granted with leave to amend on the

20   claims for disability discrimination, hostile work environment, breach of contract, and intentional

21   infliction of emotional distress.

22                                    **BACKGROUND**

23        Rockymore is a citizen of California.  Complaint ("Compl.") [Dkt. No. 1 at ECF 18–37] ¶

24   1.  She is a woman and identifies herself as "Pacific Islander/Asian."  *Id.* ¶ 13.a.  The citizenship

25
26
27
28

of the Entity Defendants[1] and Individual Defendants[2] is a subject of dispute and is discussed below.  Rockymore alleges that the Entity Defendants "directly and indirectly" employed her in San Ramon, California, as a laboratory manager.  *Id.* ¶¶ 5, 9, 11.  Since they hired her in July 2018, she had "cervical lymphadenopathy," which she calls a "viral infection that causes severe liver and kidney inflammation."  *Id.* ¶ 13.b.  This condition, she says, "required her to have frequent doctor visits" that she informed the defendants about.  *Id.*  It also required her to "take protected medical leave."  *Id.*

In November 2019, defendant Dionne hired defendant O'Neale as a regional manager to whom Rockymore reported.  *Id.* ¶ 15.a.  Rockymore alleges that she "immediately felt discriminated [against] and harassed" by O'Neale.  *Id.*  She claims that he "disregarded" her advice.  *Id.*  At one point, he approached Rockymore and her team and "sarcastic[ally]" said, "[i]s there anything you guys want to brag about?"  *Id.*  Rockymore reported this to Dionne.  *Id.*  In February 2020, on a work trip, Dionne and another employee (who is not a defendant) told Rockymore that "she was being written up for" coming "into the office in the middle of the night to complete an urgent request from a client in a timely manner."  *Id.* ¶ 15.b.  Rockymore alleges that doing so was "normal practice," that another employee had done the same thing without being written up, and that she was "shocked."  *Id.*

In March 2020, O'Neale dismissed an employee that Rockymore supervised without her knowledge and said it was part of a "reduction in workforce."  *Id.* ¶ 15.c.  Rockymore complained to human resources but never heard back.  *Id.*  She claims that "the majority of male and non-Asian" managers at other labs "had access to subordinates to complete" their work while she "was the only [one] affected by the 'reduction in workforce.'"  *Id.*  She also complained to human resources that she received less support than male and non-Asian employees but there was no result.  *Id.*  Rockymore's "workload became extremely high" but could not fill three vacancies in

---

[1] The Entity Defendants are Eurofins, Eurofins VRL, Inc. ("Eurofins VRL"), Eurofins Denver Corporate ("Eurofins Denver"), Eurofins Pre-Transplant Testing ("Eurofins Pre-Transplant"), Eurofins NSC US ("Eurofins NSC"), Eurofins DPT San Ramon ("Eurofins DPT").

[2] The Individual Defendants are Brendan O'Neale, Sara Dionne, and Rohini Ratnam.

United States District Court
Northern District of California

1    her lab.  *Id.*  She asked O'Neale and human resources to hire them, but she was not granted

2    permission.  *Id.*

3        In September 2020, Rockymore developed a "high fever" and was told by her doctor not to

4    go into work due to concerns about COVID-19.  *Id.* ¶ 15.d.  Rockymore then developed

5    "inflammation to her liver and kidney" that "require[ed] treatment from a viral and infectious

6    disease expert."  *Id.*  She was placed on medical leave through September 30, 2020.  *Id.*  During

7    this leave, O'Neale and Dionne "continued to email her requesting tasks to be completed for work

8    related [sic] projects."  *Id.*  Rockymore responded by asking Dionne to "request help from others."

9    *Id.*

10        On September 18, 2020, O'Neale and Ratnam called Rockymore to terminate her.  *Id.* ¶

11    16.  She "was shocked" and "felt sick to her stomach."  *Id.*  She alleges that she had "just launched

12    a successful project" and had never been "informed of any performance issues."  *Id.*

13        Rockymore filed this suit in California state court on December 6, 2021, and the Entity

14    Defendants removed it to this court in January 2022.  Dkt. No. 1.  Later that month, the defendants

15    moved to dismiss, Rockymore moved to remand the case in February 2022, and I set a hearing on

16    both motions for April 6.

17                        **LEGAL STANDARD**

18    **I.    MOTION TO REMAND**

19        Generally, a case can be removed from state to federal court only when the federal court

20    would have had original jurisdiction over it.  28 U.S.C. § 1441(a).  The defendant has the burden

21    of establishing federal subject matter jurisdiction.  *See Washington v. Chimei Innolux Corp.*, 659

22    F.3d 842, 847 (9th Cir. 2011).  Removability is "generally determined as of the time of the petition

23    for removal."  *Local Union 598, Plumbers & Pipefitters Industry Journeymen & Apprentices*

24    *Training Fund v. J.A. Jones Constr. Co.*, 846 F.2d 1213, 1215 (9th Cir. 1988).

25        Under 28 U.S.C. § 1332(a)(1), federal diversity jurisdiction exists when each plaintiff is a

26    citizen of a different state from each defendant and the amount in controversy exceeds $75,000.

27    Natural persons are the citizens of the state in which they are domiciled—that is, the state in which

28    they reside with intent to remain permanently.  *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853,

United States District Court
Northern District of California

3

857 (9th Cir. 2001). In assessing individuals' citizenship, courts consider factors including "current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes." *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986). Corporations are, with several exceptions, citizens of the states in which they are incorporated and maintain their principal place of business. 28 U.S.C. § 1332(c)(1).

Generally, "[i]f removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy." 28 U.S.C. § 1446(c)(2). But, "when a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014). "Where the complaint does not specify the amount of damages sought, the removing defendant must prove by a preponderance of the evidence that the amount in controversy requirement has been met." *Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 683 (9th Cir. 2006). And if the plaintiff does contest the notice of removal's allegation, "removal is proper on the basis of an amount in controversy asserted by the defendant if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold." *Dart*, 574 U.S. at 88 (quoting 28 U.S.C. § 1446(c)(2)(b) (internal quotation marks and alterations omitted).

## II.    MOTION TO DISMISS

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted

unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *See Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

## DISCUSSION

### I.   MOTION TO REMAND

Rockymore argues that the defendants have failed to show complete diversity of citizenship and that the amount in controversy exceeds $75,000. *See generally* Motion to Remand ("Remand Mot.") [Dkt. No. 21]. For the reasons that follow, the defendants have met their burdens at this stage.

### A.  Complete Diversity

As noted, all defendants must have different citizenship than Rockymore to maintain this suit. *See Kanter*, 265 F.3d at 857. The parties agree that Rockymore is a citizen of California for jurisdictional purposes. *See, e.g.*, Remand Mot. 1 ("Plaintiff is a citizen of California."); Notice of Removal ("Not.") [Dkt. No. 1] ¶ 11. Their dispute is over the citizenship of the defendants.

United States District Court
Northern District of California

1

          **i.      Entity Defendants**

2

     For diversity purposes "a corporation shall be deemed to be a citizen of every State and

3      foreign state by which it has been incorporated and of the State or foreign state where it has its

4      principal place of business."  28 U.S.C. § 1332(c)(1).  The Entity Defendants have introduced

5      evidence that they are all incorporated in states other than California, *see* Not. ¶¶12(a)–(b), (d),

6      and Rockymore does not dispute that.  The parties' dispute is whether the corporate defendants'

7      principal places of business are in California or not.

8

     For purposes of the diversity jurisdiction statute, a corporation's principal place of business

9      is its "nerve center"; that is, "the place where a corporation's officers direct, control, and

10     coordinate the corporation's activities."  *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010).  That

11     will "normally be the place where the corporation maintains its headquarters—provided that the

12     headquarters is the actual center of direction, control, and coordination."  *Id.*

13

     The defendants have met their burden to show that none of the Entity Defendants

14     maintains its principal place of business in California.  The Notice of Removal states that Eurofins

15     NCS has "its principal place of business is in Leola, Pennsylvania as it performs the vast majority

16     of its executive and administrative functions at its corporate headquarters in that location, which is

17     also the home office of its Corporate Secretary."  Not. ¶ 12(b).  The defendants submitted no

18     sufficient corroborating evidence with their notice of removal, which would have required remand.

19     *See Ganesan v. GMAC Mortg., LLC*, No. C 11-0046 SBA, 2011 WL 1496099, at *2 (N.D. Cal.

20     Apr. 20, 2011) ("Defendants' bare allegation in its Notice of Removal that Virginia is MERS'

21     principal place of business is not evidence.").  But they have included a sworn declaration with

22     their opposition brief that Eurofins NCS maintains its "headquarters in Pennsylvania" and that all

23     of its "executive officers . . . are located in Pennsylvania."  Dkt. No. 24-1 ¶ 4.[3]  And their Notice

24     of Removal states that Eurofins DPT's "principal place of business is in Centennial, Colorado as it

25     performs the vast majority of its executive and administrative functions at its corporate

26     headquarters in that location."  Not. ¶ 12(a).  They have filed a sworn declaration from a human

27

28
   [3] Rockymore does not make an argument that this type of submission is improper or that the
evidence must have accompanied the notice of removal, so I do not comment on that matter.

United States District Court
Northern District of California

1    resources manager supporting that assertion.  *See* Declaration of Dolci Morgan [Dkt. No. 1-1]  ¶ 6.

2    Unless there are contrary indications of where these entities' principal places of business were,

3    this evidence is sufficient to show that these corporations' nerve centers are not in California.

4         To resist this, Rockymore first argues that I should employ the "substantial predominance"

5    test to determine where the principal place of business was.  *See* Mot. 10.  For a time, courts were

6    split on the proper test—two of the contenders were the "nerve center" and "substantial

7    predominance" tests.  *See, e.g.*, *Montrose Chem. Corp. of California v. Am. Motorists Ins. Co.*,

8    117 F.3d 1128, 1134 (9th Cir. 1997).  But in *Hertz*, the Supreme Court granted review to decide

9    that question and, in no uncertain terms, chose the nerve center test that I apply above.  *See Hertz*,

10   559 U.S. at 80 ("We seek here to resolve different interpretations that the Circuits have given this

11   phrase."); *id.* at 92 (discussing various tests); *id* at 93 (selecting the nerve center test).

12        Rockymore also attempts to rely on the citizenship of several business divisions of the

13   companies.  *See* Remand Mot. 8–14.  But the defendants have shown—and Rockymore has no

14   evidence to dispute—that these entities are simply unincorporated divisions of the other entities

15   (not, for instance, subsidiaries that are themselves incorporated).  *See* Not. ¶ 12(d).  In this Circuit,

16   a "division of a corporation does not possess the formal separateness upon which the general rule

17   is based, and thus is not an independent entity for jurisdictional purposes." *Breitman v. May Co.*

18   *California*, 37 F.3d 562, 564 (9th Cir. 1994) (internal quotation marks and citation omitted).

19                    **ii.    Individual Defendants**

20        The defendants have also adequately alleged that the Individual Defendants are not citizens

21   of California.  The Notice of Removal alleges that O'Neale's and Dionne's residential addresses

22   are in Colorado and that they work at Eurofins DPT's corporate headquarters in Colorado.  Not. ¶

23   12(c)(i)–(ii).  Though Ratnam no longer works at Eurofins, her residential address was likewise

24   listed as Colorado and she worked at Eurofins EPT's Colorado headquarters until October 2020.

25   *Id.* ¶ 12(c)(iii).  Her 2020 W2 form was sent (presumably in 2021) to that same address and

26   Eurofins has not received a change-of-address form.  *Id.*  This is sufficient to make out a prima

27   facie case of these individuals' (non-California) citizenship.  *See, e.g.*, *Fjelstad v. Vitamin Shoppe*

28   *Indus. LLC*, No. 220CV07323ODWAFMX, 2021 WL 364638, at *3 (C.D. Cal. Feb. 3, 2021).

United States District Court
Northern District of California

Rockymore never took issue with the individual defendants' citizenship in her motion. In her reply, for the first time, she did so. Reply ISO Remand Mot. ("Remand Reply") [Dkt. No. 27] 5–6. Her tactic is not well-taken because it deprived the defendants of the opportunity to fairly respond. But because this issue is jurisdictional, I must address it. Rockymore's argument is unpersuasive. She argues only that the defendants have shown these individuals' *residence*, not their *citizenship*, which are separate. *Id.* She is correct that citizenship is determined by residence *and* intent to remain, not just residence alone. *See Kanter*, 265 F.3d at 857. But that these individuals lived and worked in Colorado is sufficient evidence of their citizenship to meet at least a prima facie burden; Rockymore has introduced no contrary evidence (though she may find it in discovery). *Cf. Lee v. BMW of N. Am., LLC*, No. SACV1901722JVSADSX, 2019 WL 6838911, at *2 (C.D. Cal. Dec. 16, 2019) (holding that residence alone is prima facie evidence of citizenship). As a result, citizenship is adequately established for present purposes.

### B. Amount in Controversy

The defendants have also shown that more than $75,000 is in controversy. Because no amount is pleaded and Rockymore challenges their assertion, the defendants must show the amount by a preponderance of the evidence. *Dart*, 574 U.S. at 88. Among other things, Rockymore seeks lost wages. The defendants calculate based on her salary at the time of termination that those wages would equal more than $260,000 at present (let alone at time of trial). *See* Opposition to the Remand Mot. [Dkt. No. 24] 10. Though Rockymore argues about other parts of their calculation, she never disputes this one. *See* Remand Reply 6–7. The defendants have, therefore, met their burden.

## II.    MOTION TO DISMISS

The defendants move to dismiss all of Rockymore's claims for failure to state a claim. *See generally* Motion to Dismiss ("Mot.") [Dkt. No. 11]. The motion is granted in part with leave to amend and denied in part.

### A. Discrimination

The defendants move to dismiss Rockymore's claim for discrimination on the basis of race, gender, and disability, which is only against the Entity Defendants. Mot. 13–14; Compl. ¶¶

8

22–28.  The motion is denied to the extent the claim is based on race or gender discrimination; it is granted with leave to amend to the extent it is based on disability discrimination.

It is unlawful under California's Fair Unemployment and Housing Act ("FEHA") for

an employer, because of the race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or military and veteran status of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment.

Cal. Gov't Code § 12940(a).  The California Supreme Court has explained that while "[t]he specific elements of a prima facie case" of FEHA discrimination "may vary depending on the particular facts," the plaintiff generally "must provide evidence that (1) he was a member of a protected class, (2) . . . was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive."  *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 355 (2000) (citation omitted).

I begin with Rockymore's allegations of race and sex discrimination, which are adequately pleaded.  There is no dispute that being a woman and being of Asian descent are protected classes.  *See* Cal. Gov't Code § 12940(a); Compl. ¶ 13.a.  Rockymore has also adequately pleaded that she was "competently performing" her job: immediately before her termination, she had "launched a successful project" and she had never been informed of any "performance issues" other than the one reprimand that post-dated O'Neale's arrival.  *Id.* ¶ 15.d.  And she suffered an adverse employment action when she was terminated.  *See Guz*, 24 Cal. 4th at 355 (explaining that termination is an adverse employment action).

The parties' dispute on this issue focuses on the last element: whether there is some "circumstance suggest[ing] discriminatory motive."  *Id.*  Though Rockymore's allegations are far from robust, I conclude she has adequately pleaded that this type of circumstance exists.  She alleges that, as soon as O'Neale was hired, she began to be treated differently.  Compl. ¶¶ 15.a–b.  Several months into his tenure, he dismissed one of Rockymore's employees without telling her or

1    consulting with her beforehand.  *Id.* ¶ 15.c.  According to her, similarly situated male managers

2    and managers who were not Asian had no similar terminations.  *Id.*  These allegations are

3    sufficient at this stage to create a reasonable inference that O'Neale acted discriminatorily,

4    including in the termination.  *See Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir.

5    2004) (holding that plaintiffs can meet their burden by showing that "similarly situated individuals

6    outside [their] protected class were treated more favorably" than they); *see also Rashdan v.

7    Geissberger*, 764 F.3d 1179, 1183 (9th Cir. 2014) ("Evidence of discriminatory motive can be

8    direct or indirect.").

9            Reinforcing this conclusion, it is reasonable to infer from the Complaint that the

10   termination was pretextual.  Rockymore pleads that she had never been confronted with any

11   performance issues aside from the February 2020 write-up (which occurred after O'Neale started

12   and is alleged to be for something employees uncontroversially did) and yet was terminated after

13   taking just a few days off for medical leave on the advice of a doctor during a pandemic.  *Id.* ¶¶

14   15.d., 16; *see France v. Johnson*, 795 F.3d 1170, 1175 (9th Cir. 2015), *as amended on reh'g* (Oct.

15   14, 2015) (holding that an employee can demonstrate pretext "by showing that the employer's

16   proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not

17   believable").  In short, the claim survives to the extent it is predicated on race- or gender-based

18   discrimination.

19           That is not true for Rockymore's allegations of discrimination on the basis of disability.

20   The putative disability is Rockymore's cervical lymphadenopathy and the illness she developed in

21   September 2020, which I take to be a manifestation of the lymphadenopathy based on its

22   symptoms (and the parties' positions).  But there is no allegation in the Complaint that would

23   permit a reasonable inference that any adverse employment action was taken on the basis of either

24   of these.  Rockymore's brief, similarly, focuses entirely on showing that her disabilities are

25   *cognizable* under FEHA, it draws no plausible connection between them and any adverse

26   employment action.  There is no allegation about discriminatory statements about disability nor is

27   there (as there is with the race- and gender-based claims) any indication that similarly situated

28   employees without disabilities were treated differently.  Accordingly, the claim is dismissed with

United States District Court
Northern District of California

10

1    leave to amend to the extent it is predicated on disability discrimination.

2         **B. Hostile Work Environment Harassment**

3         The defendants move to dismiss the harassment claim, which is brought against all

4    defendants.  *See* Mot. 14–16; Compl. ¶¶ 29–36.  I agree that the claim is not adequately pleaded; it

5    is dismissed with leave to amend.

6         "FEHA prohibits harassment of an employee."  *Lawler v. Montblanc N. Am., LLC*, 704

7    F.3d 1235, 1244 (9th Cir. 2013); *see also* Cal. Gov't Code § 12940(j).  Under FEHA, a plaintiff

8    must demonstrate that "(1) she is a member of a protected group; (2) she was subjected to

9    harassment because she belonged to this group; and (3) the alleged harassment was so severe that

10   it created a hostile work environment."  *Lawler*, 704 F.3d at 1244.  "Harassment cannot be

11   occasional, isolated, sporadic, or trivial; rather the plaintiff must show a concerted pattern of

12   harassment of a repeated, routine or a generalized nature."  *Aguilar v. Avis Rent A Car Sys., Inc.*,

13   21 Cal. 4th 121, 131 (1999) (internal alterations and citations omitted).

14        As a general matter, actions are not FEHA harassment if they are mere "commonly

15   necessary personnel management actions."  *Lawler*, 704 F.3d at 1244; *Janken v. GM Hughes*

16   *Elecs.*, 46 Cal. App. 4th 55, 65, 80 (1996).  Such actions are those "of a type necessary to carry out

17   the duties of business and personnel management."  *Janken*, 46 Cal. App. 4th at 65.  They usually

18   include things like "hiring and firing, job or project assignments, office or work station

19   assignments, promotion or demotion, performance evaluations, the provision of support, the

20   assignment or non-assignment of supervisory functions, deciding who will and who will not attend

21   meetings, [and] deciding who will be laid off."  *Id.* at 64–65.  Harassment, on the other hand,

22   "consists of actions outside the scope of job duties which are not of a type necessary to business

23   and personnel management."  *Lawler*, 704 F.3d at 1245.  This does not mean that employers can

24   act discriminatorily and cloak their actions in the garb of the management exception; instead,

25   "[t]hese actions may retrospectively be found discriminatory if based on improper motives, but in

26   that event the remedies provided by the FEHA are those for discrimination, not harassment."

27   *Janken*, 46 Cal. App. 4th at 65.  In addition to discrimination liability, the California Supreme

28   Court has held that the managerial acts doctrine has another limitation: "some official employment

United States District Court
Northern District of California

11

1  actions done in furtherance of a supervisor's managerial role can also have a secondary effect of

2  communicating a hostile message." *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 709 (2009), *as*

3  *modified* (Feb. 10, 2010).  But, to establish this sort of liability, the actions must "establish a

4  widespread pattern of bias."  *Id.*

5          Rockymore's allegations fail to state a claim for FEHA harassment.  Almost everything

6  she references in the complaint are "commonly necessary personnel actions"—namely, her

7  termination, her supervisors requiring her to carry out tasks while sick, the meeting at which she

8  was admonished, and the refusals to hire more employees for her.  They are not actionable as

9  harassment unless they fall into *Roby*'s exception.  *See Lawler*, 704 F.3d at 1245; *Janken*, 46 Cal.

10  App. 4th at 65.  They do not.  She has not adequately pleaded that there was a "widespread pattern

11  of bias" in these actions that had "a secondary effect of communicating a hostile message"

12  sufficiently severe to alter the terms and conditions of employment.  *Roby*, 47 Cal. 4th at 709.

13  Indeed, in the curt portion of her brief discussing *Roby*, Rockymore only regurgitates the basic

14  legal principle without engaging at all with her pleadings or explaining why it is met.  *See*

15  Opposition to the Mot. ("Oppo.") [Dkt. No. 19] 11.

16          The only non-personnel-management act alleged in the complaint is O'Neale's "sarcastic"

17  comment to Rockymore and her team with the gist that they had no good news to report.  But that

18  single comment (which is not facially discriminatory) was "isolated" and relatively "trivial" rather

19  than severe, "concerted," or "routine."  *Aguilar*, 21 Cal. 4th at 131.  Courts have found allegations

20  significantly worse than this—and those more facially discriminatory—to not be harassment.  *See,*

21  *e.g. Brennan v. Townsend & O'Leary Enterprises, Inc.*, 199 Cal. App. 4th 1336, 1353–58 (2011)

22  (rejecting as gender-based harassment an email calling the plaintiff a "big-titted, mindless one"

23  sent between coworkers, a male employee asking women to sit on his lap while dressed as Santa

24  Clause, an employee wearing a "veil . . . with a plastic penis attached" in a staff meeting, and a

25  supervisor asking questions about the plaintiff's sex life).

26          Accordingly, the harassment claim is dismissed with leave to amend.

27      **C.  Retaliation**

28          The government moves to dismiss the FEHA retaliation claim, which is against the Entity

United States District Court
Northern District of California

Defendants.  *See* Mot. 16–17; Compl. ¶¶ 37–43.  The claim is actionable on one of the alleged

"protected activities" that Rockymore puts forward.

Under FEHA, it is unlawful for an employer to "discharge, expel, or otherwise

discriminate against any person because the person has opposed any practices forbidden under [the

statute] or because the person has filed a complaint, testified, or assisted in any proceeding under

[the statute]."  Cal. Gov't Code § 12940(h).  To "establish a prima facie case of retaliation under

the FEHA, a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer

subjected the employee to an adverse employment action, and (3) a causal link existed between the

protected activity and the employer's action."  *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028,

1042 (2005).  "Protected activity," in turn, "can take many forms."  *Id.*  In general, it is likely to be

an employee's opposition to unlawful activities, complaints about unlawful activities, or refusal to

carry out unlawful activities.  *See id.* at 1042–43.  It not only means "conduct that ultimately is

determined to be unlawful[]" under FEHA but "also when the employee opposes conduct that the

employee reasonably and in good faith believes to be discriminatory."  *Id.* at 1043.

The basis of the retaliation claim is somewhat unclear from the Complaint, which just lists

the elements of the violation in conclusory terms, without linking them to pleaded facts.  *See*

Compl. ¶¶ 37–43.  In her brief, Rockymore points to two instances of protected activity.  The first

she describes as follows:

> Plaintiff alleges that on or around September 2020, she suffered a disabling illness that
> prevented her ability to work and required her to take medical [sic].  Plaintiff informed her
> supervisor, O'Neil [sic], of her condition. In response to O'Neale' [sic] and Dionne's
> requests Plaintiff must complete tasks for work related projects.  Consequently, Plaintiff
> replied by requesting help from others while she was on leave.  Thus, her request for help
> is a clear opposition.

Oppo. 12 (citations omitted).  Second, she points to her complaints about O'Neale's behavior to

Dionne and human resources.  *Id.*

The first of these is not a "protected activity" under FEHA as it is currently pleaded.  All

that Rockymore states is that she asked Dionne to request help from others while she was on

medical leave.  Compl. ¶ 15.d.  That is not fairly understood to be opposition to any unlawful

activity or a complaint about it.  *See Yanowitz*, 36 Cal. 4th at 1042–43.  There is no plausible link

United States District Court
Northern District of California

1    drawn between, for instance, disability discrimination and this request to Dionne to have others

2    carry out tasks.  While Rockymore is correct that she was "not required to use legal terms or

3    buzzwords when opposing discrimination," there is not even an oblique indication in this

4    allegation "when read in [its] totality," that Rockymore was "oppos[ing] discrimination."  *Id.* at

5    1047.  Even Rockymore's best cases involved *complaints* about the allegedly wrongful activity.

6    *See, e.g.*, *Castro-Ramirez v. Dependable Highway Express, Inc.*, 2 Cal. App. 5th 1028, 1048

7    (2016) (finding a plausible claim when the employee complained about a change in hours after

8    previously telling the employer that he needed to care for his son with a disability).

9         The second of these, however, is plausibly a protected activity.  Rockymore alleges that,

10   after O'Neale dismissed her employee, she complained to human resources.  Compl. ¶ 15.c.

11   Indeed, she explicitly alleges that she complained to human resources that she received less

12   support than employees who were male or not Asian.  *Id.* ("Rockymore believed this was not

13   ordinary because the majority of male and non-Asian managers at other labs had access to

14   subordinates to complete benchwork, whereas she was the only [one] affected by the 'reduction in

15   workforce.'  Rockymore believes she was not given the same support as the majority of male and

16   non-Asian employees, to which she again raised complaints to Human Resources.").  That is, as

17   pleaded, a straightforward complaint about allegedly unlawful conduct.  *See, e.g.*, *Yanowitz*, 36

18   Cal. 4th at 1042–43; *Castro-Ramirez*, 2 Cal. App. 5th at 1048.

19        The defendants counter that Rockymore's pleading about this complaint is not detailed

20   enough.  *See* Mot. 17.  While it is true that she does not provide much specificity, she need not do

21   more at this stage because she has drawn a plausible link between O'Neale's alleged

22   discrimination and her complaint to human resources about it.  She is not under a heightened

23   pleading standard.  The defendants also argue that "the lapse in time between her alleged reports

24   in November 2019 and March 2020 and the September 2020 termination of Plaintiff's

25   employment preclude any inference of retaliatory motive."  *Id.*  That will be for the factfinder.

26   While delay may weaken Rockymore's case as a factual matter, I cannot hold as a matter of law

27   that, if six months passes from a complaint to a termination, the employer gets a free pass on

28   motive.  The defendants' only proffered authority, *Serlin v. Alexander Dawson Sch., LLC*, 656 F.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    App'x 853 (9th Cir. 2016), does not compel a different conclusion.  To start, the case is not

2    binding.  The defendants also mischaracterize it.  According to them, it held that there can be "no

3    causal connection inferred when less than three months passed between the complaint and adverse

4    action."  Mot. 17.  But all the panel said there was that a three-month period between the

5    complaint and the action was not enough alone to *establish* but-for causation without other

6    evidence on those facts.  *Serlin*, 656 F. App'x at 856.  It did not hold or imply that such a gap

7    *defeats* retaliation claims as a matter of law.

8        **D.  Disability Claims**

9        The defendants move to dismiss Rockymore's claims for failure to provide a reasonable

10   accommodation and failure to engage with the interactive process, which are against the Entity

11   Defendants.  Mot. 17–18; Compl. ¶¶ 44–59.  Their motion is denied.

12       The defendants' only challenge to these claims is that Rockymore has not alleged a

13   qualifying disability.  *See* Mot. 17–18.  Both claims require a qualifying disability.  *See Cuiellette*

14   *v. City of Los Angeles*, 194 Cal. App. 4th 757, 766 (2011) (failure to accommodate); *Scotch v. Art*

15   *Inst. of California*, 173 Cal. App. 4th 986, 1009–10 (2009) (failure to engage in the interactive

16   process).  As noted above, I take the disability at issue to be the cervical lymphadenopathy and its

17   manifestation in the September 2020 illness.  *See supra* Section II.B.  Consequently, only alleged

18   "physical disabilities" are at issue.  Under FEHA, a "physical disability" includes (but is not

19   limited to) "[h]aving any physiological disease, disorder, condition, cosmetic disfigurement, or

20   anatomical loss that does both of the following:  (A) Affects one or more of the following body

21   systems: neurological, immunological, musculoskeletal, special sense organs, respiratory,

22   including speech organs, cardiovascular, reproductive, digestive, genitourinary, hemic and

23   lymphatic, skin, and endocrine.  (B) Limits a major life activity."  Cal. Gov't Code § 12926(m)(1).

24       The defendants argue that Rockymore's descriptions of her purported disability are

25   conclusory, fail to demonstrate that she meets the legal test, and that her "alleged symptoms—

26   'inflammation' and 'high fever'—are temporary and fleeting and therefore do not qualify as a

27   disability under FEHA's definition."  Mot. 18.  They also argue that "Plaintiff alleges that she

28   informed O'Neale of 'her fever' but nothing else" and this "isolated comment" would not put the

15

1    defendants on notice of the disability.  *Id.*

2         I disagree.  Rockymore alleges that she had previously informed the defendants about

3    doctor's appointments for the lymphadenopathy, *see* Compl. ¶ 13.b., so they would plausibly have

4    known about it.  The disease (apparently) manifested in liver and kidney inflammation and fever

5    in September 2020, and she was placed on medical leave, which the defendants would have

6    known.  *See id.* ¶ 15.d.  Accordingly, it appears that her disease affected body systems and limited

7    at least the major life activity of work.  *See* Cal. Gov't Code § 12926(m)(1); *id.* ¶

8    12926(m)(1)(B)(iii) (stating that "major life activities" includes "working").  This is unlike the

9    defendants' case on this issue, which held that an employer would not have known of the

10   disability because the form that the plaintiff relied on for this communication stated "only that

11   plaintiff was unable to work on four work days . . . due to an unspecified condition, and that

12   plaintiff was hospitalized for three days."  *Avila v. Cont'l Airlines, Inc.*, 165 Cal. App. 4th 1237,

13   1249 (2008), *as modified on denial of reh'g* (Aug. 28, 2008).  The court held that, consequently,

14   the employer would not have known he had a qualifying disability.  *Id.*  Here, as explained, the

15   allegations are that the employer was aware.

16        Because this is the defendants' only challenge to these claims, I do not address the

17   remaining elements or other potential issues.

18        **E.  Failure to Prevent**

19        Both parties agree that, for present purposes, the claim for failure to prevent discrimination

20   and harassment rises or falls with the substantive discrimination and harassment claims.  *See* Mot.

21   19; Oppo. 15.

22        **F.  Breach of Contract**

23        Rockymore alleges that she and the defendants agreed (expressly and impliedly) that she

24   would be terminated only for good cause.  Compl. ¶¶ 68–74.  The defendants move to dismiss the

25   breach of express and implied contract claims on the same grounds.  Mot. 19–20.

26        In California, there is a statutory presumption that employment is at will.  Cal. Lab. Code §

27   2922; *Guz*, 24 Cal. 4th at 335.  That presumption can be overcome if the employer and employee

28   provide otherwise by contract.  *See Guz*, 24 Cal. 4th at 335–36.  The classic contractual alternative

United States District Court
Northern District of California

16

is "an agreement that the employee will be terminated only for 'good cause.'" *Id.* at 336. This "contractual understanding need not be express, but may be implied in fact, arising from the parties' conduct evidencing their actual mutual intent to create such enforceable limitations." *Id.* Under California law, "a contract implied in fact consists of obligations arising from a mutual agreement and intent to promise where the agreement and promise have not been expressed in words." *Retired Employees Assn. of Orange Cty., Inc. v. Cty. of Orange*, 52 Cal. 4th 1171, 1178 (2011) (internal quotation marks omitted); *see also* Cal. Civ. Code § 1621.

Rockymore's express and implied contract claims are not adequately pleaded. The only allegation about the existence of this alleged good-cause contract is the conclusory assertion that, at some point, the defendants' agents entered into a vague "oral agreement" or gave "oral assurances" based on unspecified consideration in unspecified circumstances. Compl. ¶¶ 60, 73. These pleadings essentially parrot the legal requirements of the claim and are insufficient. *See Gilead*, 536 F.3d at 1055. Rockymore has leave to amend to plead the *factual* allegations underlying this alleged contract so that the pleading is plausible.[4]

### G.  Negligent Hiring, Supervision, and Retention

The defendants move to dismiss Rockymore's claim for negligent hiring, supervision, and retention. Mot. 20. I reject their particular argument for dismissal.

In California, "[a]n employer can be liable to a third person for negligently hiring, supervising, or retaining an unfit employee." *Alexander v. Cmty. Hosp. of Long Beach*, 46 Cal. App. 5th 238, 264 (2020) (internal quotation marks omitted). A plaintiff must show: "(1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate cause between the breach and (4) the plaintiff's injury." *Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1339 (1998). This liability "is based upon the facts that the employer knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes." *Doe*

---

[4] The defendants assert that the claim cannot survive because Rockymore was an at-will employee. *See* Mot. 20. First, that is just an assertion in a brief, not a pleaded allegation or matter subject to judicial notice, so it cannot be considered. Second, that is the very merits question to be answered by litigating this claim—whether Rockymore was at-will or could be fired only for good-cause.

1  *v. Cap. Cities*, 50 Cal. App. 4th 1038, 1054 (1996).  To establish liability for negligent

2  supervision, "a plaintiff must show that a person in a supervisorial position over the actor had

3  prior knowledge of the actor's propensity to do the bad act."  *Z.V. v. Cty. of Riverside*, 238 Cal.

4  App. 4th 889, 902 (2015).

5       The defendants first argue that this claim is derivative of the discrimination, harassment,

6  and retaliation claims.  *See* Mot. 20.  It is true that the *facts* underlying them are the same.  But the

7  defendants present no authority for the view that they are derivative and the ultimate legal

8  questions are distinct:  In discrimination, harassment, and retaliation claims, the question is

9  whether the actor takes actions that meet the legal requirements for each violation.  In this claim,

10  the question is whether the employer knew or should have known of a particular *risk* from the

11  employee and was negligent in the face of it.

12       The defendants argue that the claim must independently fail because Rockymore has not

13  identified "who it is that Defendants knew or should have known created a particular risk or

14  hazard."  *Id.*  I disagree: the Complaint is clear that O'Neale is the employee who allegedly

15  harmed Rockymore (which Rockymore confirms in her brief, *see* Oppo. 16–17).

16       Again, because these are the defendants' only challenges to the claim, I do not address any

17  other potential issues with it.

18       **H.  Wrongful Termination**

19       The parties agree or appear to implicitly admit that the claim for wrongful termination in

20  violation of public policy is derivative of the discrimination, harassment, and retaliation claims.

21  *See* Mot. 20 (so stating); Oppo. 17 (stating that the violation of public policy would be the

22  discrimination).

23       **I.  Whistleblower Retaliation**

24       The defendants move to dismiss the claim for whistleblower retaliation, which is brought

25  against the Entity Defendants.  Mot. 20–22; Compl. ¶¶ 84–90.  Under Section 1102.5 of the Labor

26  Code, as relevant to these facts, an employer cannot "retaliate against an employee for disclosing

27  information, or because the employer believes that the employee disclosed or may disclose

28  information . . . to a person with authority over the employee or another employee who has the

United States District Court
Northern District of California

authority to investigate, discover, or correct the violation or noncompliance . . . if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute." Cal. Lab. Code § 1102.5(b).

The defendants make the same argument on this claim as they did on the retaliation claim: that Rockymore has not adequately pleaded how she engaged in protected activity. *See supra* Section II.C. But, for the reasons explained above, Rockymore has adequately pleaded that she informed human resources about O'Neale's allegedly discriminatory behavior, which is plausibly actionable. *See id.*

## J. IIED

The defendants move to dismiss the claim for intentional infliction of emotional distress ("IIED"), which is against all defendants. Mot. 22–24; Compl. ¶¶ 91–95. "To state a cause of action for intentional infliction of emotional distress a plaintiff must show: (1) outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Vasquez v. Franklin Mgmt. Real Est. Fund, Inc.*, 222 Cal. App. 4th 819, 832 (2013) (internal quotation marks and alteration omitted). In this context, "outrageous conduct" means conduct that is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Hughes v. Pair*, 46 Cal. 4th 1035, 1051 (2009). It is not sufficient that the conduct be "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Lawler*, 704 F.3d at 1245. Just as with a FEHA harassment claim, IIED claims cannot be premised on mere managerial actions unless there is something about it that elevates it to being independently actionable. *Id.*; *see, e.g.*, *Cordova v. Target Corp.*, No. 2:16-cv-04809-SVW-AJW, 2016 U.S. Dist. LEXIS 114995, at *5 (C.D. Cal. Aug. 26, 2016) (finding a plausible IIED claim when a supervisor used "racially charged statements" and "made several other disparaging comments towards him based on national origin, ancestry, age and parental-status").

### i. Preemption

The defendants first argue that the IIED claim is preempted by the workers' compensation

United States District Court
Northern District of California

exclusivity doctrine.  Mot. 22–23.  I disagree.

In general, "[p]hysical and emotional injuries sustained in the course of employment are preempted by the workers' compensation scheme and generally will not support an independent cause of action."  *Yau v. Santa Margarita Ford, Inc.*, 229 Cal. App. 4th 144, 161 (2014).  But the exclusive remedy of workers' compensation applies to misconduct when it is "normal part of the employment relationship, such as demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances."  *Cole v. Fair Oaks Fire Prot. Dist.*, 43 Cal. 3d 148, 160 (1987).  That is, it does not preempt claims for acts that "exceed[] the risks inherent in the employment relationship."  *Livitsanos v. Superior Ct.*, 2 Cal. 4th 744, 754 (1992).

Because Rockymore's IIED claim is predicated on discrimination, it is not barred by California's workers' compensation exclusivity rule.  As several California Court of Appeals panels have held, "[d]iscrimination in employment is *not* a normal incident of employment" and, consequently, not barred by the rule.  *Accardi v. Superior Ct.*, 17 Cal. App. 4th 341, 347 (1993), *as modified on denial of reh'g* (Aug. 20, 1993); *see also Fretland v. Cty. of Humboldt*, 69 Cal. App. 4th 1478, 1492 (1999); *Jones v. Los Angeles Cmty. Coll. Dist.*, 198 Cal. App. 3d 794, 809 (1988).  Discrimination is neither a "normal part of the employment relationship" nor is it a risk "inherent" in that relationship.  *Cole*, 43 Cal. 3d at 160; *Livitsanos*, 2 Cal. 4th at 754.  The statutory duty not to discriminate is a duty independent of the employment agreement or relationship.  As a result, I agree with the many federal district courts that have held or suggested that California's workers' compensation exclusivity doctrine does not bar IIED claims predicted on unlawful discrimination.  *See Brooks v. Corecivic of Tennessee LLC*, No. 20CV0994 DMS (JLB), 2020 WL 5294614, at *6 (S.D. Cal. Sept. 4, 2020) (collecting cases); *Vanderhule v. Amerisource Bergen Drug Corp.*, No. SACV162104JVSJCGX, 2017 WL 168911, at *4 (C.D. Cal. Jan. 17, 2017); *Barsell v. Urb. Outfitters, Inc.*, No. CV0902604MMMRZX, 2009 WL 1916495, at *4 (C.D. Cal. July 1, 2009)*; see also Fernandez v. PSC Indus. Outsourcing LP*, No. 5:17-CV-00444-EJD, 2017 WL 3129208, at *3 (N.D. Cal. July 24, 2017) (holding that the law does not clearly establish such claims are preempted); *Macias v. Levy Premium Foodservices Ltd. P'ship*, No. 214CV09220SVWPLA, 2015 WL 12747900, at *4 (C.D. Cal. Feb. 12, 2015) (same);

1   *Charles v. ADT Sec. Servs.*, No. CV 09-5025 PSG AJWX, 2009 WL 5184454, at *3 (C.D. Cal.

2   Dec. 21, 2009) (same).

3       The defendants' counterargument relies on two cases, but neither requires a different

4   outcome.  In the first, the California Supreme Court addressed the scope of the workers'

5   compensation exclusivity doctrine as applied to IIED claims.  *See Miklosy v. Regents of Univ. of*

6   *California*, 44 Cal. 4th 876, 902 (2008).  There, it addressed retaliation for alleged

7   whistleblowing, not discrimination.  *See id.* at 883.  The court held that even though such

8   retaliation was malicious, it was ultimately still a "normal part" of the employment relationship.

9   *Id.* at 902.  And though it thought the exception for conduct that exceeds the risks inherent in

10  employment may have applied "at first blush," it relied on a past case to hold—without much

11  explanation—that was not so.  *Id.* (citing *Shoemaker v. Myers*, 52 Cal. 3d 1, 25 (1990)).  The

12  second case relied exclusively on *Miklosy* and held, again, that a whistleblowing claim was

13  preempted.  *Yau*, 229 Cal. App. 4th at 162.  Neither case addressed the *sui generis* situation of

14  discrimination.  And federal district courts after both cases have still held claims predicated on

15  discrimination not preempted.  *See, e.g.*, *Vanderhule*, 2017 WL 168911, at *4.  It appears that the

16  defendants are largely latching onto *Yau*'s statement that misconduct that can be characterized as

17  "harassment" is not actionable, but *Yau* was discussing harassment due to whistleblowing, not

18  discriminatory harassment.  *Yau*, 229 Cal. App. 4th at 162.

19              **ii.      Adequacy of Pleading**

20      The defendants also argue that Rockymore has failed to state a claim for relief.  I agree.

21  For the same reasons as the harassment claim is not actionable, this claim fails.  *See supra* Section

22  II.B.  Most of the actions here are managerial and not actionable on this basis even if

23  discriminatory.  *Lawler*, 704 F.3d at 1245.  The only one that arguably is not managerial is

24  O'Neale's comment about the team having nothing to report which, though seemingly rude, does

25  not approach being "so extreme as to exceed all bounds of that usually tolerated in a civilized

26  community."  *Hughes*, 46 Cal. 4th at 1051.  Again, courts have found significantly more offensive

27  comments not actionable than this lone, relatively mild one.  *See, e.g.*, *Schneider v. TRW, Inc.*, 938

28  F.2d 986, 993 (9th Cir. 1991) (finding no IIED where a "supervisor screamed and yelled in the

United States District Court
Northern District of California

1  process of criticizing her performance, threatened to throw her out of the department and made

2  gestures she interpreted as threatening").  Nor is this a case in which the comments themselves are

3  alleged to be discriminatory.  *See, e.g.*, *Cordova*, 2016 U.S. Dist. LEXIS 114995, at *5.  The claim

4  is dismissed with leave to amend.

## CONCLUSION

6      The motion to dismiss is DENIED on claim one to the extent it alleges race and gender

7  discrimination; claims three, four, five, nine, and eleven; and claims six and ten to the extent the

8  underlying claims survive.  The motion to dismiss is GRANTED WITH LEAVE TO AMEND on

9  claim one to the extent it alleges disability discrimination; claims two, seven, eight, and twelve;

10  and claims six and ten to the extent the underlying claims are dismissed.  An amended complaint

11  shall be filed within 20 days.

12      **IT IS SO ORDERED.**

13  Dated: April 20, 2022



William H. Orrick
United States District Judge

United States District Court
Northern District of California